UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONAH DORSEY<br>1230 3rd Avenue<br>Altoona, PA 16602<br><br>    Plaintiff,<br><br>v.<br><br>VITRO AUTOGLASS LLC<br>d/b/a Pittsburgh Glass Works, LLC<br>1 U.S.- 220<br>Tyrone, PA 16686<br>    and<br>STAFF MANAGEMENT<br>SOLUTIONS, LLC<br>860 W. Evergreen Avenue<br>Chicago, IL 60642<br>    and<br>TRUEBLUE INC.<br>1015 A Street<br>Tacoma, WA 98402-5122<br><br>    Defendants. | CIVIL ACTION<br><br>CASE NO.: 3:20-cv-201<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, Jonah Dorsey (hereinafter referred to as "Plaintiff" unless indicated otherwise), hereby complains as follows against Defendants and aver as follows:

**INTRODUCTION**

1. Plaintiff initiates the instant action to redress violations by Vitro Autoglass LLC d/b/a Pittsburgh Glass Works, LLC; Staff Management Solutions, LLC; and TrueBlue Inc. (hereinafter collectively referred to as "Defendants" unless indicated otherwise) of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq*.) and the

Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff asserts herein that he was not accommodated and was constructively terminated from Defendants/not hired for any other permanent or temporary positions with Defendants, because of his disability and/or in retaliation for his requests for reasonable accommodations.

## JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. 1331, has jurisdiction over Plaintiff's claims because this civil action arises under a law of the United States.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff is proceeding herein under the ADA and has properly exhausted his administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. He is required to wait one full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue-letter under the ADA. Plaintiff's PHRA claims will mirror identically his federal claims under the ADA.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant Vitro Autoglass LLC ("Vitro," if referred to individually) is a worldwide glass supplier and is the largest producer of glass in North America.

9. Defendant Staff Management Solutions, LLC ("SMS," if referred to individually) is headquartered at the above-captioned address and provides temporary staffing services to its clients throughout the United States, including the location at which Plaintiff was placed to work in Tyrone, Pennsylvania.

10. Defendant TrueBlue Inc. ("TB," if referred to individually) is headquartered at the above-captioned address and provides temporary staffing services to its clients throughout the United States, including the location at which Plaintiff was placed to work in Tyrone, Pennsylvania.

11. SMS is a subsidiary of TB. While Plaintiff received payroll documentation from SMS, both SMS and TB coordinated with Plaintiff in connection with Plaintiff's requests for an accommodation (discussed *infra*). Moreover, TB represented on documentation that it was Plaintiff's "employer," in connection with Plaintiff's requests for accommodations.[2]

12. Plaintiff was placed by SMS/TB to work within Vitro, and although Plaintiff was hired and paid through SMS/TB, Plaintiff was treated in all functional respects like an employee while working within Vitro. Defendants' management had the ability to manage Plaintiff,

---

[2] Although TB was not named in Plaintiff's EEOC Charge, Plaintiff is permitted to proceed herein against TB, since TB received notice of the Charge, and it has a shared commonality of interest with SMS. *See Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980), *vacated on other grounds sub nom., Retail, Wholesale & Dept. Store Union v. G.C. Murphy Co.*, 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981); *see also Kinnally v. Bell of Pennsylvania*, 748 F.Supp. 1136, 1140 (E.D.Pa. 1990).

discipline Plaintiff, give directive to Plaintiff, and make decisions regarding Plaintiff's employment. Plaintiff was permitted to address his work concerns with Defendants' management and was obligated to follow the policies of Defendants. SMS/TB management also informed Plaintiff that his request for an accommodation (discussed *infra*) was denied, and that Plaintiff was not permitted to return to work, based upon Vitro's policy that he was required to wear a mask without exception. Thus, for the foregoing reasons, Defendants may be treated as a single and/or joint employer for purposes of the instant action.

13. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

14. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

15. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

16. In early January of 2019, Plaintiff was recruited, hired and placed to work in Vitro by SMS/TB, who has consistently recruited for and staffed labor for Vitro for many years.

17. Plaintiff was placed to work in Vitro's glass fabrication warehouse in Tyrone, Pennsylvania.

18. Plaintiff worked for Defendants in several different capacities, including inspection, trimming and other labor as requested. In total, Plaintiff was employed by Defendants for approximately 1.5 years until he was terminated/constructively terminated (as explained below).

19. Defendants' plant temporarily shut-down in or about late March of 2020, due to the COVID-19 pandemic.

20. Due to the COVID-19 pandemic, laborers were subject to a temporary layoff. Laborers were gradually returned to work as reopening occurred and as business increased.

21. Plaintiff in particular was scheduled to return to work on or about June 21, 2020.

22. Defendants, however, enacted a policy that face-mask wearing was mandatory. In general, Plaintiff thought that this policy was appropriate, however, he could not wear a face-mask for medical reasons.

23. Throughout his employment with Defendants, Plaintiff was a hard-working employee who performed his job well. However, Plaintiff has and continues to suffer from disabilities including but not limited to serious respiratory problems such as Chronic obstructive pulmonary disease (COPD), Sarcoidosis and an anxiety disorder.

24. As a result of his aforesaid disabilities, Plaintiff (at times) was and is limited in his ability to perform some daily life activities, including but not limited to breathing and working (among other daily life activities).

25. Despite Plaintiff's aforesaid health conditions and limitations, he was and is still able to perform the duties of his job well with Defendants, however, he did require the reasonable medical accommodation of being permitted to work without wearing a face-mask.

26. Prior to the shut-down, Plaintiff's supervisor was Deborah Mickey, SMS/TB's Floor Supervisor. However, when Plaintiff returned to work, he was being supervised by a different (unidentified) SMS/TB Floor Supervisor.

27. On or about June 21, 2020, Plaintiff returned to work. As a result of Defendants' face-mask requirement, Plaintiff had to leave work after a few hours of work due to his hyperventilation and inability to breathe.

28. Plaintiff informed his new supervisor that he could not breathe as a result of his health conditions; he was severely coughing; and that his anxiety was flaring up. Although Plaintiff was permitted to leave for the day, he was informed by this individual that he needed to submit a doctor's excuse from wearing a face-mask, in order to return to work.

29. Thereafter, Plaintiff made attempts to return to work by speaking with Stephanie McFarland, SMS/TB's Human Resource Manager; and Payton Barnes, SMS/TB's Leave Administrator. Plaintiff provided medical documentation to SMS/TB that he was able to fully perform his job(s) within Defendants, but Plaintiff just could not wear a face-mask for medical reasons.

30. Defendants took a no-negotiation, no-accommodation view and refused to engage in any interactive process with Plaintiff. SMS/TB told Plaintiff that it was Vitro's policy that Plaintiff could not be permitted to return to work without a mask.

31. Plaintiff was told point-blank by McFarland, that his only choices were that he needed to either take disability leave or FMLA leave. Plaintiff was refused permission to return to work without a mask by SMS/TB, based upon Vitro's decision/policy.

32. Defendants could have easily accommodated Plaintiff's request, as Plaintiff: (a) would have worked without a mask at his own peril, as he informed McFarland; (b) could have

6

socially distanced from others in many roles at least four to eight feet from any other person; and/or (c) would have been able to wear a face shield that covered his entire face, but did not obstruct his breathing like an actual mask over his face and nose.

33. Defendants refused to engage in the interactive process with respect to Plaintiff's requests for an accommodation. Instead, Plaintiff was discriminatorily removed from his position with Defendants and/or was constructively terminated (from both a permanent staffing role and/or the potential for direct, permanent hire).

34. Prior to Plaintiff's separation and requests for an accommodation, he applied for different jobs within SMS/TB, however, Plaintiff was not hired for any of these positions, despite the fact that he was more than qualified.

35. Plaintiff believes and therefore avers that he was also ultimately not hired for any additional jobs within SMS/TB because of his disabilities and/or requests for an accommodation.

### Count I
### Violations of the Americans with Disabilities Act ("ADA", as amended)
([1] Discrimination; [2] Retaliation; and [3] Failure to Accommodate)
– Against all Defendants –

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Defendants refused to accommodate Plaintiff's known disabilities, as Defendants refused to permit Plaintiff to return to work without wearing a face-mask.

38. Plaintiff was terminated and/constructively terminated from Defendants because of: (a) his known health conditions; (b) his perceived health conditions; (c) due to his record of impairment; and/or (d) in retaliation for requesting reasonable accommodations.

39. These actions as aforesaid constitute unlawful discrimination, retaliation and failure to accommodate under the ADA.

**Count II**
**Violations of the Americans with Disabilities Act ("ADA", as amended)**
(Failure to Hire: [1] Discrimination; and [2] Retaliation)
– Against Defendants SMS and TB Only –

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff was not hired/considered for other positions which he applied for with Defendants SMS/TB because of: (a) his known health conditions; (b) his perceived health conditions; (c) due to his record of impairment; and/or (d) in retaliation for requesting reasonable accommodations.

42. These actions as aforesaid constitute unlawful discrimination and retaliation under the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating against employees and are to be ordered to promulgate an effective policy against such discrimination/retaliation and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld (if determined that there are such benefits) from the date he first suffered discrimination at the hands of Defendants until the date of verdict;

C. Plaintiff is to be awarded punitive and liquidated damages (in accordance with the Statutes he is suing under), as permitted by applicable law, to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded damages for emotional distress and/or pain and suffering and any and all other equitable and legal relief as the Court deems just, proper and appropriate (as permitted under the Statutes he is suing under);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF, & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esquire
Attorney for Plaintiff
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
*Attorneys for Plaintiff*

Dated: October 7, 2020